28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

Montaz Kennedy

    Plaintiff

    v.

Samuel Fields, Erin or, Eric Porter,

Willie J. Johnson, Henry D. Simmons,

Felicia T. Peoples, John Doe, Chad Audi,

James E. White

    Defendant(s)

_____/

Case: 2:23-cv-11949
Judge: Parker, Linda V.
MJ: Ivy, Curtis
Filed: 08-08-2023
CMP KENNEDY VS FIELDS ET AL (DP)

Jury Trial Requested

# 42 U.S.C.  1983

## Complaint for a Civil Case

The Parties to This Complaint

A.  The Plaintiff:

Montaz Kennedy

16745 Avon

Detroit, Michigan   48214

Wayne County

(313) 419-5578

Email: thelostboy28@yahoo.com

B.  The Defendant(s):

Defendant No. 1

Samuel Fields

Building Director

Detroit Rescue Mission Ministries

3535 Third Avenue

Detroit, Michigan 48201

Wayne County

Defendant No. 2

Erin or Eric Porter

Staff Specialist

Detroit Rescue Mission Ministries

3535 Third Avenue

Detroit, Michigan 48201

Wayne County

Defendant No. 3

Willie J. Johnson

Detroit Police Officer

Detroit Police Department

Badge No. 154

2875 W. Grand Blvd.

Detroit, Michigan 48202

Wayne County

Defendant No. 4

Henry D. Simmons

Detroit Police Officer

Detroit Police Department

Badge No. 4168

2875 W. Grand Blvd.

Detroit, Michigan 48202

Wayne County

Defendant No. 5

Felicia T. Peoples

Detroit Police Officer

Detroit Police Department

Badge No. 4883

13530 Leisure St.

Detroit, Michigan 48227

Defendant No. 6

John Doe

Detroit Police Officer

Detroit Police Department

Address: Unknown

Badge No.: Unknown

Defendant No. 7

Chad Audi

Chief Executive Officer

Detroit Rescue Mission Ministries

150 Stimson St.

Detroit, Michigan 48201

Wayne County

Defendant No. 8

James E. White

Detroit Police Chief

Detroit Police Department

1301 Third Avenue

Detroit, Michigan 48226

Jurisdiction is Proper under 28 U.S.C.  1331

All defendant(s) are sued under the color of State Law

All defendants are sued in their individual and official capacity.

STATEMENT OF CLAIMS:

CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS/RETALIATION/EXCESSIVE FORCE/THREATS TO USE EXCESSIVE FORCE/VERBAL HUMILIATION/INTENTIONAL AFFLICTIONCTION OF EMOTIONAL DISTRESS/FAILURE TO INTERVE

1.    Plaintiff (Pl.), Montaz (Kennedy) arrived at Detroit Rescue Mission Ministries (DRMM) 3535 Third Avenue, Detroit, Michigan 48201, location, homeless shelter on July 27, 2022.

2.    On July 28, 2022, Pl. Kennedy didn't engage in any conduct that was a violation of any rules, policies, or procedures of the State of Michigan governing DRMM 3535 Third Ave. location homelessness shelter while Pl. Kennedy was a resident at that location.

3.    On July 28, 2022 around or about 10:00p.m. Pl. Kennedy returned to the DRMM 3535 Third Ave. location prior to the 10:45p.m. curfew and attempted to enter but was denied entrance by the third shift staff working at that time.  On July 29, 2022 Pl.

Kennedy generated a handwritten letter of complaint, addressed to the Building Director, Defendant (Def.) Samuel (Fields) of the DRMM 3535 Third Ave. location and hand delivered it to Def. Fields about his staff not allowing walk-ins unless they go to the Coordinated Assessment Model (C.A.M.) first and about one (1) of his staff members threatening Pl. Kennedy that if Pl. Kennedy didn't go C.A.M., Pl. Kennedy will not be allowed back into the DRMM 3535 Third Ave. location homelessness shelter.

4. On July 30, 2022, a DRMM 3535 Third Ave. location staff member wrote Pl. Kennedy up with a "Client Incident Report" for no legitimate reason.

On August 1, 2022, Pl. Kennedy generated and personally hand delivered it to Def. Fields a letter of complaint concerning the July 28, 2022, denial of entrance to the DRMM 3535 Third Ave. location homelessness shelter by his third shift staff.

5. On August 3, 2022 Pl. Kennedy by certified mail, mailed Def. Fields two (2) separate Freedom of Information Act (F.O.I.A.) request to obtain any and all "Client Incident Report Forms" that were written on July 30, 2022 for loitering.

On August 4, 2022, Pl. Kennedy generated a F.O.I.A. request and personally hand delivered it to the DRMM 3535 Third Ave. location, Operations Supervisor, a Ms. Roxanne (Dukes), requesting a copy of the video footage of the side of the building of the DRMM 3535 Third Ave. location homeless shelter for July 30, 2022.

6. On August 4, 2022, Pl. Kennedy generated a F.O.I.A. request addressed to and personally hand delivered by Pl. Kennedy to DRMM 3535 Third Ave. location Case manager, a Mrs. F. (Walton), requesting the full names and working titles of the staff that worked the third shift on July 28, 2022, at the DRMM 3535 Third Ave. location

homeless shelter so they could be properly named in a written complaint.   On August 5, 2022 Pl. Kennedy generated and personally hand delivered to Ms. Dukes a letter of complaint concerning her and other DRMM 3535 Third Ave. location staff forcing Pl. Kennedy and other homeless men locate themselves somewhere else other than outside the DRMM 3535 Third Ave. location homelessness shelter everyday despite that Pl. Kennedy and some of the other homelessness men had no other place to go.

7.     On August 5, 2022, Pl. Kennedy went next door to the DRMM 3535 Third Ave. location homeless shelter, being the DRMM 3607 Third Ave. location to make yet another of many meritorious complaints to any supervisors in the DRMM 3607 Third Ave. location about the conditions and treatment of Pl. Kennedy and the rest of the homeless men at the DRMM 3535 Third Ave. location homeless shelter.

8.     Pl.  Kennedy was not able to speak with a supervisor at that time but was informed by a staff member at that address to keep a look out for the manager, as this is how he defined their working title at the time Pl. Kennedy spoke with him. Of all DRMM homeless shelter locations, a Ms. Darlene (Owens), who he said will be driving a Black Charger.

9.     On August 5, 2022, Ms. Owens after having been told that Pl. Kennedy requested to speak with her. Came over to the DRMM 3535 Third Ave. location where Pl. Kennedy resided to speak with Pl. Kennedy.

10.   On August 5, 2022, Ms. Owens, a supervisor of DRMM's multiple locations including the 3535 Third Ave. location sat down with Pl. Kennedy to listen to some of the concerns, complaints, and issues Pl. Kennedy wanted to bring to any DRMM supervisors'

attention about the poor, inhumane living conditions, horrible treatment of the homeless men including Pl. Kennedy and mismanagement of the 3535 Third Ave. locations.

11. During the discussion between Ms. Owens and Pl. Kennedy, Pl. Kennedy was misled by Ms. Owens to believe that one (1) of the issues of concern raised to her had been resolved with what she informed Pl. Kennedy to do.

12. On August 6, 2022, Pl. Kennedy attempted to engage in the conduct Pl. Kennedy was misled to believe was allowed from the conversation Pl. Kennedy had with Ms. Owens the previous day of August 5, 2022.

13. At that moment Pl. Kennedy attempted to explain to Def. Porter that per Ms. Owens instructions to Pl. Kennedy. Pl. Kennedy was allowed to engage in the conduct Pl. Kennedy was attempting to engage in.

14. On August 8, 2022, one (1) day before all named Def(s). to this complaint engaged in the malfeasance asserted. Pl. Kennedy due that Def. Porter wouldn't comply with what Pl. Kennedy understood were the instructions, orders and resolutions given by Ms. Owens. Pl. Kennedy generated a handwritten letter of complaint about Def. Porter's actions on August 6, 2022, addressed Ms. Owens and early in the morning that same day, before any DRMM 3607 Third Ave. staff, Ms. Owens being one (1) of them, came to work at the DRMM 3607 Third Ave. location. Walked next door to the DRMM 3607 Third Ave. location from the DRMM 3535 Third Ave. location and placed the letter of complaint in the mailbox of the DRMM 3607 Third Ave. location where Pl. Kennedy had

been informed by the DRMM staff member the previous day on August 5, 2022, that Ms. Owens is frequently present at that location.

15.  From Pl. Kennedy's first day at the DRMM 3535 Third Ave. location homeless shelter, which was July 27, 2022, to Pl. Kennedy's last day at that homeless shelter location, which was August 9, 2022. Pl. Kennedy had to make numerous verbal complaints to Def. Fields about the poor conditions, and mistreatment of himself (Pl. Kennedy) and the other homeless men at the DRMM 3535 Third Ave. location by Def(s). Fields and Def. Porter, as well as to other DRMM 3535 Third Ave. location staff members.

16.  Each time Pl. Kennedy made a verbal complaint to Def. Fields about his staff's misconduct and the poor living conditions at the DRMM 3535 Third Ave. location homeless shelter or, about Def. Fields poor management of the homeless shelter and mistreatment of Pl. Kennedy and other homeless men. Def. Fields despite being well aware of Pl. Kennedys' fragile mental health state, along with other DRMM staff members became increasingly hostile towards Pl. Kennedy and either verbally abused Pl. Kennedy, deprived Pl. Kennedy of abilities other DRMM homeless men residents were allowed to engage in and had Pl. Kennedy wrote up repeatedly for no reason.

17.  Each time Pl. Kennedy made a written complaint to Def. Fields about his staff at DRMM 3535 Third Ave. location mistreatment of Pl. Kennedy and other homeless residents or about Def. Fields own misconduct. Def. Fields despite being well aware of Pl. Kennedy's fragile mental state, became increasingly hostile towards Pl. Kennedy in various manners.

18. Each time Pl. Kennedy made a verbal complaint to other DRMM 3535 Third Ave. location staff about the mistreatment of Pl. Kennedy and Pl. Kennedy's fellow homeless men residents and the poor living conditions of the homeless shelter to any staff, other than Def. Fields. Def. Fields and Def. Porter despite being well aware of, as well as other DRMM 3535 Third Ave. location homeless shelter staff, Pl. Kennedys' fragile mental health state would become increasingly hostile towards Pl. Kennedy verbally abusing Pl. and denying Pl. Kennedy abilities that were afforded to other homeless men at that shelter.

19. On August 9, 2022, Def. Fields announced out of the clear blue sky that there was going to be a mandatory attendance building/facility meeting for the DRMM 3535 Third Ave. location homeless shelter residents and staff.

20. On August 9, 2022, after hearing for the first time that there will be a mandatory attendance meeting that day. Pl. Kennedy became concerned and started making his way to the backyard area of the DRMM 3535 Third Ave. location to inquire of his fellow homeless residents had they heard of this mandatory attendance meeting prior to the recent announcement of it by Def. Fields.

21. On August 9, 2022, prior to the start of the mandatory attendance meeting, while Pl. Kennedy was walking through the dining area to go the backyard area, Pl. Kennedy uttered a profanity.

22. While Pl. was on the DRMM 3535 Third Ave. location homeless shelter backyard investigating. Def. Fields in spite of knowing that, Pl. Kennedy suffered from a severe mental health diagnosis, that Pl. Kennedy would be living back on the streets, that Pl.

needed the homeless shelter for substance; hygiene; sleep and water came to the backyard where Pl. Kennedy was at the time and informed Pl. Kennedy that he had to leave the DRMM 3535 Third Ave. location homelessness shelter permanently.

23. When Pl. Kennedy asked why.

24. Def. Fields informed Pl. Kennedy that it was because Pl. Kennedy used profanity.

25. Pl. Kennedy immediately informed Def. Fields that the reason Def. Fields was terminating Pl. Kennedy was not on legitimate grounds.

26. Pl. Kennedy also informed Def. Fields, that if, Def. Fields engages in the unjustified kicking Pl. Kennedy out of DRMM 3535 Third Ave. location homeless shelter permanently. That Pl. Kennedy would not have any place to go.

27. Def. Fields responded to Pl. Kennedy with a response that was not in accordance with the rules, policies, procedures and laws that govern DRMM 3535 Third Ave. location homeless shelter.

28. On August 9, 2022, around or, about between the hours (hr.) of 8:00a.m. to 9:30am. Def. Fields acted consistent with his prior conspiring together and came to an agreement with other DRMM 3535 Third Ave. location homeless shelter staff and certain Detroit Police Officers (DPO's) some of which were DPO's Def. Willie J. (Johnson), Def. Henry D. (Simmons), Def. Felicia (Peoples) and Def. John (Doe) to subject Pl. Kennedy to retribution for filing grievances/complaints with Def. Fields about other DRMM 3535 Third Ave. location staff including Def. Porter and Def. Fields himself misconduct. Def. Fields instructed Def. Porter to call the Detroit Police (DP) on Pl.

Kennedy to have Pl. Kennedy forcefully removed from the DRMM 3535 Third Ave. location homeless shelter.

29. Def. Fields left from the dining area, where he was conducting a mandatory attendance building/facility meeting with all the homeless men and staff who were there. And went up to the front hallway of the DRMM 3535 Third Ave. location homeless shelter to further the conspiring together and coming to an agreement with DPO's Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe. To get back at Pl. Kennedy for making complaints

30. When Def. Fields returned to the dining area, he returned with DPO's Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe.

31. DPO's Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe walked up to Pl. Kennedy and immediately surrounded Pl. Kennedy without any provocation from Pl. Kennedy.

32. Prior to the time leading up to and at all times during the interaction between Pl. Kennedy Def. Fields, Def. Porter, DPO's Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe, Pl. Kennedy was docile the entire time.

33. Def. Johnson, who seemed to be the Team leader out of the four (4) Def. DPO's and certainly was the chief speaker. Without inquiring of Pl. Kennedy what was the situation or, problem ordered Pl. Kennedy to leave the DRMM 3535 Third Ave. location homeless shelter immediately.

34. Pl. Kennedy informed Def. Johnson, as well as the other three (3) DPO's being Def. Simmons, Def. Peoples and Def. Doe who had surrounded Pl. Kennedy with def.

Johnson. That he had not done anything that warranted Def. Fields or, Def. Porter to call the DP on him to have him removed from that DRMM 3535 Third Ave. location homeless shelter.

35. Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe intentionally ignored Pl. Kennedy's assertions and Def. Johnson continued to order Pl. Kennedy to leave despite that Def. Johnson and all the other three (3) DPO's Def(s). did not ask Pl. Kennedy why Pl. Kennedy would not leave the DRMM 3535 Third Ave. location homeless shelter as he was told to do by Def. Fields.

36. After repeated verbal going back and forth between Pl. Kennedy and Def. Johnson of ordering Pl. Kennedy to leave and informing Def. DPO's Johnson, Def. Simmons, Def. Peoples and Def. Doe that Pl. Kennedy did nothing to warrant getting put out and had no place to go. DPO Def. Johnson reached to the side of his waste and unholstered a yellowish looking Taser and from what Pl. Kennedy believed, armed the Taser while looking at Pl. Kennedy directly in the eyes with a menacing look on Def. Johnson's face. And stated to Pl. Kennedy, "I Know what to do."

37. Dread fell over Pl. Kennedy and Pl. Kennedy fearing the excruciating pain that would be shot through his body from the volts of the Taser reached down and grabbed his bag that he used to carry documents and other important belongings around and held it in his hand with the intentions to block the discharge of the Taser into Pl. Kennedy's body.

38. At that time Def. Doe already having been a part of the initial unwarranted surrounding of Pl. Kennedy, moved himself further behind Pl. Kennedy.

39. Def. Doe, without even the slightest provocations from Pl. Kennedy the entire time, unnecessarily, forcefully grabbed Pl. Kennedy's upper right and left arms from behind with such force that it caused Pl. Kennedy great pain and Pl. Kennedy couldn't get out of Def. Doe's grip.

40. Def. Doe then compelled Pl. Kennedy across the dining area floor with such force that Pl. Kennedy couldn't stop his feet to the ground to prevent the unwarranted compelling of himself by Def. Doe to the front of the building of the DRMM 3535 Third Ave. location homeless shelter.

41. Def. Doe, having utilized unnecessary, unprovoked brute force on PL. Kennedy, successfully compelled Pl. Kennedy out of the DRMM third Ave. location homeless shelter.

42. Def. Johnson, the apparent ringleader and certainly the Chief speaker begin a barrage of derogatory comments about Pl. Kennedy to Pl. Kennedys face. Humiliating Pl. Kennedy in front of everyone who was standing around in the area and anyone who passed by at the time.

43. As from the beginning of the encounter with all four (4) DPO's being Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe, Pl. Kennedy even at that time made no comments nor engaged in any conduct to warrant the demeaning of him by Def. Johnson.

44. Def. Johnson then stated to Pl. Kennedy as Def. Johnson stood directly in front of Pl. Kennedy. "I don't want to hear any of that Prison legal stuff."

45. Def. Johnson when stating the above in Paragraph 52, of this complaint, also made a few more derogatory comments about Pl. Kennedy directly to Pl. Kennedy's face. Once

again humiliating Pl. Kennedy in front of anyone who could hear Def. Johnson speaking to Pl. Kennedy.

46.   At no time when Def.  Johnson was unnecessarily threatening Pl. Kennedy with a Taser, failing to investigate why Pl. Kennedy wouldn't leave the shelter as told to by Def. Fields, unnecessarily verbally abusing Pl. Kennedy repeatedly, did Def. Simmons, Def. Peoples or Def. Doe step in by any means to discourage or stop Def. Johnson from subjecting Pl. Kennedy to Def. Johnsons' malfeasance.

47.   At no time when Def. Doe unnecessarily, excessively, physically compelled Pl. Kennedy out of the DRMM 35635 Third Ave. location homeless shelter did Def. Johnson, Def. Simmons, or Def. Peoples step in to discourage or stop Def. Doe from physically mishandling Pl. Kennedy.

48.   At no time when Def. Doe unnecessarily, excessively, physically compelled Pl. Kennedy out of the DRMM 35635 Third Ave. location homeless shelter did Def. Johnson, Def. Simmons, or Def. People step in to discourage or stop Def. Doe from physically mishandling Pl. Kennedy.

49.   At no time when contacted by Def. Fields and Def. Porter as well as other DRMM 3535 Third Ave. location homeless shelter staff to collaborate in subjecting Pl. Kennedy to unnecessary brute force and intimidation in retaliation for Pl. Kennedy making verbal and written complaints on Def. Fields and Def. Porter, as well as other DRMM 3535 Third Ave. location homeless shelter staff. Did DPO's Def. Johnson, Def. Simmons, Def. Peoples or Def. Doe step in by any means to discourage or stop Def. Fields and Def.

Porter, as well as other DRMM 3535 Third Ave. location staff from enticing them to engage with them in any of the misconduct(s) on Pl. Kennedy.

UNLAWFUL DETAINMENT/ RETALIATION/HARMFUL THREATS/INTENTIONAL AFFLICTION OF EMOTIONAL DISTRESS/FAILURE TO HAVE INTERVENED

50. That on August 9, 2022, DPO's Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe entered the DRMM 3535 Third Ave. location homeless shelter after having conspired together and came to an agreement with Def. Fields and Def. Porter, as well as with other DRMM 3535 Third Ave. location homeless shelter staff. To subject Pl. Kennedy to reprisal in various forms for Pl. Kennedy's complaint making on Def. Fields and Def. Porter, as well as on other DRMM 3535 Third Ave. location homeless shelter staff.

51. That on August 9, 2022, DPO Def. Doe, without any provocations from Pl. Kennedy forcefully seized Pl. Kennedy's upper arms causing great pain and compelled Pl. Kennedy out of the DRMM 3535 Third Ave. location homeless shelter for no legitimate reason.

52. That once Pl. Kennedy was compelled onto the sidewalk in front of the DRMM 3535 Third Ave. location homeless shelter by DPO Def. Doe. Def. Johnson demanded Pl. Kennedy provide Def. Johnson Pl. Kennedys name so Def. Johnson could send Pl. Kennedy back to prison.

53. When Pl. Kennedy heard what Def. Johnson stated what he was going to do to him. Pl. Kennedy unequivocally understood that he could not leave the presence of any of the

DPO's presence being Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe and would be taken to jail at some point.

54. That this unequivocal understanding of not being able to leave the DPO's Def(s). presence was compounded by Def. Johnson having menacingly stated to Pl. Kennedy earlier, "I don't want to hear any of that prison legal stuff."

55. That for a very significant time period Pl. Kennedy made no attempt to leave the presence of the DPO's Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe, due to how the Def(s). were positioned around Pl. Kennedy, Pl. Kennedy being scared of the Def(s). due how they had been mistreating him and the specific words Def. Johnson said to Pl. Kennedy, despite that Pl. Kennedy wanted to leave the Def(s). presence.

56. At no time when DPO Def. Johnson was threatening to have Pl. Kennedy incarcerated unwarrantedly, did any of the other DPO's being Def. Simmons, Def. Peoples, and Def. Doe step in to discourage or stop Def. Johnson from making the statements he made to Pl. Kennedy.

CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS/DENIAL OF PROCEDURAL DUE PROCESS/DENIAL OF SUBSTANTIVE DUE PROCESS

57. That on August 9, 2022, around or about 8:00a.m. to 9:30am. Def. Fields in violation of the established written requirements to terminate Pl. Kennedys ability to have shelter, substance, hygiene abilities, water, a place to sleep and protection from the outside

elements: that being weather and other perils. Told Pl. Kennedy he had to permanently leave the DRMM 3535 Third Ave. location homeless shelter for no legitimate reason or justification.

58. When Pl. Kennedy asked Def. Fields, when will Def. Fields, be providing Pl. Kennedy with written notice of the reason for the termination of Pl. Kennedy from the homeless shelter and a hearing for those reasons.

59. That Def. Fields responded to Pl. Kennedys Inquiry, "If we even have a hearing."

60. As Def. Fields and Pl. Kennedy walked from the backyard into the dining area. Pl. Kennedy continued to verbalize his objections in complaint form to the unjustified termination of his dependent upon residence at the DRMM 3535 Third Ave. location homeless shelter.

61. That on August 9, 2022, around or about 8:00a.m. to 9:30am. Def. Fields instructed Def. Porter to call the DP on Pl. Kennedy to have Pl. Kennedy removed from the homeless shelter.

62. That on August 9, 2022, around or about 8:00a.m. to 9:30am. Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe entered the DRMM 3535 Third Ave. location homeless shelter after having been called by Def. Fields and Def. Porter.

63. That at the time when Def. Fields left the dining area after having been informed by Def. Porter that the DP were up front. When Def. Fields went and met with Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe. Def. Fields conspired together and came to an agreement with Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe by informing them how important it was to have Pl. Kennedy removed from the homeless

shelter before Pl. Kennedy could request or demand of someone that will authorize for Pl. Kennedy to be given written notice of why Def. Fields was terminating Pl. Kennedys residence at the DRMM 3535 Third Ave. location homeless shelter, as well as would allow Pl. Kennedy to Marshal evidence to rebuttal the reason for terminating Pl. Kennedy from the homeless shelter and would allow Pl. Kennedy to have an impartial hearing to consider the evidence.

64. Due to Def. Fields, Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe conspiring together and came to an agreement to prevent Pl. Kennedy from being able to receive written notice of the claims being leveled against him to terminate Pl. Kennedy from the homeless shelter, have the ability to marshal evidence to rebuttal the claims being used to justify terminating Pl. Kennedy from the homeless shelter and not get an impartial hearing to consider Pl. Kennedys evidence to rebuttal the reason for terminating Pl. Kennedy from the DRMM homeless shelter. By agreeing to and carrying out the unwarranted physical forcing of Pl. Kennedy to be removed from the DRMM 3535 Third Ave. location homeless shelter. Pl. Kennedy ended up living on the streets of Detroit without a place to rest his head, without the ability to obtain substance, water, practice a hygiene regiment, properly relieve himself, sleep, or shield off bad weather.

65. Pl. Kennedy became increasingly worried about his circumstances during and after due to what Def. Fields, Def. Porter, Def. Johnson, Def. Simmons, Def. Peoples, Def. Doe, as well as the other DRMM 3535 Third Ave. location homeless shelter staff were subjecting Pl. Kennedy to, after the Def(s). conspired together and came to an agreement.

RESPONDENT SUPERIOR:

66. Def. Fields and Def. Porter at the time of the violations they engaged in on August 9, 2022, were employed at DRMM by Def. Chad (Audi) who is the Chief Executive Officer (C.E.O.) of all DRMM homeless shelters in the State of Michigan.

67. Def. Fields mismanaging of the 3535 Third Ave. DRMM location along with the repeated corrupted misconducts of Def. Fields and Def. Porter were well known to Def. Audi and Def. Audi purposefully ignored the repeated misconducts of his employees being Def. Fields and Def. Porter, as well as other DRMM staff.

68. Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe at the time of the violations on August 9, 2022, were employed by the Detroit Police Department as Police Officers, and were carrying out the duties for the furtherance of Detroit Police Chief, James E. (White).

CLAIMS FOR RELIEF:

1.  The actions of Def. Fields and Def. Porter, becoming increasingly hostile towards Pl. Kennedy in the form of speaking menacingly to Pl. Kennedy, denying Pl. Kennedy other abilities afforded to other homeless men at the shelter and having Pl. Kennedy wrote up repeatedly without justification after Pl. Kennedy made repeated verbal and written complaints to Def. Fields about Def. Fields, Def. Porter, as well as other DRMM staff, misconduct. Caused Pl. Kennedy to become extremely concerned for his wellbeing, lose sleep, lose his appetite and stop taking his mental health medication. Constituted retaliation in violation of the First Amendment to the United States Constitution.

2.  The actions of Def. Fields, Def. Porter, Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe conspiring together and came to an agreement, the latter four (4) being Detroit Police Officers. To have and the actual carrying out, Pl. Kennedy removed from the DRMM homeless shelter forcefully for no other reason but for Pl. Kennedy having made repeated verbal and written complaints to Def. Fields about Def. Fields, Def. Porter, as well as other DRMM homeless shelter staff misconduct, caused Pl. Kennedy mental anguish in the form of Pl. Kennedy has lost sleep, becoming very worried over where and when he would find a place to live, having Pl. Kennedy concerned about where his next meal was going to come from. Constituted retaliation in violation of the First Amendment to the United States Constitution.

3.  The actions of Def. Fields, Def. Porter, Def. Simmons, Def. Peoples and Def. Doe in conspiring together and came to an agreement. To have and the actual

carrying out, Pl. Kennedy removed from the DRMM homeless shelter forcefully for no other reason but for Pl. Kennedy having made repeated verbal and written complaints to Def. Fields about Def. Fields, Def. Porter, as well as other DRMM homeless shelter staff misconduct. So to ensure Pl. Kennedy wouldn't be able to receive the required written notice of why Pl. was being terminated from the DRMM homeless shelter, wouldn't have the ability to marshal evidence to rebuttal the reason being given to terminate Pl. Kennedy from the homeless shelter and to ensure Pl. Kennedy wouldn't be able to have a meaningful and impartial hearing on the reasons being given to terminate Pl. Kennedy from the DRMM homeless shelter which caused Pl. Kennedy pain in the upper part of his arms and mental anguish in the form . Constituted retaliation in violation of the First Amendment to the United States Constitution.

4. The actions of Def. Fields, Def. Porter, Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe in conspiring together and came to an agreement. To the actual caring out of, Pl. Kennedy being removed from the DRMM homeless shelter forcefully, without justification, that caused Pl. Kennedy pain in his upper arms and mental anguish constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

5. The actions of Def. Johnson in pulling out his Taser on Pl. Kennedy arming the Taser, without Pl. Kennedy giving Def. Johnson any reason to do so, causing Pl. Kennedy mental anguish constituted excessive force in violation of the Fourteenth Amendment to the United States Constitution.

6. The actions of Def. Fields, Def. Porter, Def. Johnson, Def. Simmons and Def. Doe in conspiring together. To have and the actual carrying out Pl. Kennedy removed from the DRMM homeless shelter forcefully, to ensure Pl. Kennedy wouldn't be able to receive the required written notice of why he was being terminated from the DRMM homeless shelter, wouldn't have the ability to marshal evidence to rebuttal the reason being given to terminate Pl. Kennedy from the homeless shelter and to ensure Pl. Kennedy wouldn't be able to have a meaningful and impartial hearing on the reasons being given to terminate Pl. Kennedy from the DRMM homeless shelter caused Pl. Kennedy mental anguish and constituted denial of procedural due process in violation of the Fourteenth Amendment to the United States Constitution.

7. The actions of Def. Fields, Def. Porter, Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe in conspiring together and came to an agreement to have and the actual carrying out Pl. Kennedy removed from the DRMM homeless shelter forcefully, where Pl. Kennedy depended on substance, shelter, hygiene supplies, water, the ability to shower and a place to sleep and caused Pl. Kennedy pain and mental anguish. Was unconstitutional and constituted a substantive due process violation, in violation of the Fourteenth Amendment to the United States Constitution.

8. The actions of Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe as Detroit Police Officers in surrounding Pl. Kennedy unnecessarily outside the DRMM homeless shelter which caused Pl. Kennedy to resoundingly believe he

wasn't free to leave the Def. Detroit Police Officers presence and would be taken to jail caused Pl. Kennedy mental anguish and constituted unlawful detainment in violation of the Fourth Amendment to the United States Constitution.

9.   The actions of Def. Johnson asking Pl. Kennedy what's his name, but for the sole purpose of making Pl. Kennedy believe he would be incarcerated, as Def. Johnson ensured when he said to Pl. Kennedy, he, Def. Johnson wanted Pl. Kennedy's name so he could send Pl. Kennedy back to prison. Causing Pl. Kennedy resoundingly to believe he wasn't free to leave the Def. Detroit Police Officers presence, caused Pl. Kennedy mental anguish. Constituted unlawful detainment in violation of the Fourteenth Amendment to the United States Constitution.

RELIEF REQUESTED:

COMPENSATORY DAMAGES

1.  Award compensatory damages jointly and severally against Def. Fields and Def. Porter for the mental anguish Pl. suffered from the retaliation of the Def(s). by verbally abusing Pl. Kennedy, denying Pl. abilities afforded to other homeless men at the homeless shelter and having Pl. wrote up repeatedly unwarrantedly solely due to Pl. making complaints on Def(s).

2.  Award compensatory damages jointly and severally against Def. Fields, Def. Porter, Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe for the pain and mental anguish Pl. suffered by the Def(s). conspiring together and came to an agreement to subject Pl. to retaliation in the form of having Pl. unwarrantedly and excessively physically removed from the homeless shelter solely due to Pl. making complaints with and on Def. Fields and on Def. Porter.

3.   Award compensatory damages jointly and severally against Def. Fields, Def. Porter, Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe for the pain and mental anguish Pl. suffered by the Def(s). conspiring together and came to an agreement to subject Pl. to retaliation in the form of, having Pl. unwarrantedly and excessively removed from the homeless shelter solely due to Pl. making complaints with and on Def. Fields and on Def. Porter, so to ensure Pl. would not get the required procedural due process.

4.  Award compensatory damages jointly and severally against Def. Fields, Def. Porter, Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe for the pain and mental anguish suffered by the Def(s). conspiring together and came to an agreement, to unwarrantedly and excessively remove Pl. Kennedy from the homeless shelter.

5.  Award compensatory damages against Def. Johnson for the mental anguish suffered by Def. pulling a Tasar on Pl. unwarrantedly and arming it while making a menacing comment to Pl. at the same time causing Pl. Kennedys' body and mind to wash with fear.

6.  Award compensatory damages jointly and severally against Def. Fields, Def. Porter, Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe for the mental anguish Pl. Suffered by Def(s). conspiring together and came to an agreement to deprive Pl. of the ability to, receive written notice of the reason he was being terminated from the homeless shelter, the ability to marshal evidence to rebuttal the reason and a meaningful and impartial hearing on the reason.

7. Award compensatory damages jointly and severally against Def. Fields, Def. Porter, Def. Johnson, Def. Simmons, Def. Peoples and Def. Doe for the pain and mental anguish Pl. suffered by Def(s). removing Pl. Kennedy unwarrantedly from the homeless shelter

where Pl. was dependent on the substance, hygiene products, water, showers and a place to sleep the shelter provided to Pl.

8.   Award compensatory damages jointly and severally against Def. Johnson, Def. Simmons, Def. Peoples, and Def. Doe for the mental anguish Pl. suffered by Def(s). unlawfully detaining Pl. in front of the homeless shelter.

PUNITIVE DAMAGE:

1.        Award punitive damages against all named Defendants for their individual participation in the misconduct(s).

Date: August 8, 2023

Respectfully Submitted,

Montaz Kennedy

Montaz Kennedy

16745 Avon

Detroit, Michigan 48219

Email: thelostboy28@yahoo.com

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Montaz Kennedy

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff  Wayne
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☑ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product       Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |       Liability ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &       Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
|     & Enforcement of Judgment |       Slander       Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'       Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted |       Liability ☐ 368 Asbestos Personal | |       New Drug Application | ☐ 470 Racketeer Influenced and |
|     Student Loans | ☐ 340 Marine       Injury Product | | ☐ 840 Trademark |       Corrupt Organizations |
|     (Excludes Veterans) | ☐ 345 Marine Product       Liability | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment |       Liability **PERSONAL PROPERTY** | **LABOR** |       Act of 2016 |       (15 USC 1681 or 1692) |
|     of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle ☐ 371 Truth in Lending |       Act | | Protection Act |
| ☐ 190 Other Contract |       Product Liability ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal       Property Damage |       Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise |       Injury ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) |       Exchange |
| | ☐ 362 Personal Injury -       Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | |       Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☑ 440 Other Civil Rights **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting ☐ 463 Alien Detainee |       Income Security Act | **FEDERAL TAX SUITS** | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/       Sentence | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability |       Accommodations ☐ 530 General | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Agency Decision |
| |       Employment **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| |       Other ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| |       Conditions of | | | |
| |       Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |  ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. 1983

Brief description of cause:
Civil Rights Violation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE
August 8, 2023

SIGNATURE OF ATTORNEY OF RECORD
Montaz Kennedy

**FOR OFFICE USE ONLY**

RECEIPT #  _____  AMOUNT  _____  APPLYING IFP  _____  JUDGE  _____  MAG. JUDGE  _____

PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                        ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other          ☐ Yes
            court, including state court? (Companion cases are matters in which      ☑ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :