UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONTAZ KENNEDY,                         Case No. 23-11949
                    Plaintiff,
v.                                      Linda V. Parker
                                        United States District Judge
SAMUEL FIELDS, *et al.*,
                    Defendants.         Curtis Ivy, Jr.
_____/            United States Magistrate Judge

**REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS**
**(ECF Nos. 11, 13)**

## I.      PROCEDURAL HISTORY

Plaintiff sues employees of the Detroit Rescue Mission Ministries

("DRMM"), a homeless shelter, and Detroit Police Department officers and the

Chief of Police for violations of constitutional rights in August 2022.  Both the

DRMM Defendants and police Defendants moved to dismiss the complaint.  (ECF

Nos. 11, 13).  Defendant Peoples, a Detroit Police Department officer, filed a

notice of joinder/concurrence in the Police Department's motion to dismiss.  (ECF

No. 20).  Plaintiff later moved for leave to amend the complaint.  That motion is

addressed in a separate Order.

For the reasons discussed below, the undersigned recommends that the

motions to dismiss be **GRANTED**.

## II.     COMPLAINT ALLEGATIONS

The complaint begins with a discussion of Plaintiff's interactions with and complaints to DRMM employees.  He alleges that he began staying at DRMM, a homeless shelter, on July 27, 2022.  The next day, he arrived at the shelter before curfew but was denied entrance.  On July 29, 2022, he delivered a letter of complaint to Defendant Fields about the incident.  (ECF No. 1, PageID.5-6).  He asserts that between July 27, 2022, and August 9, 2022, he lodged complaints about poor conditions at the facility and mistreatment.  (*Id.* at PageID.9, ¶ 15).  Each time he made a complaint, DRMM staff members became hostile towards him.  (*Id.* at ¶ 16).

The heart of the complaint is about events that occurred on August 9, 2022.  That day, Defendant Fields announced that there would be a mandatory attendance meeting at DRMM.  As Plaintiff made his way to the meeting location, he uttered a profanity.  (*Id.* at PageID.10, ¶ 19-21).  Fields told Plaintiff he needed to leave the facility because profanity was not allowed.  (*Id.* at PageID.11).  Removing Plaintiff from the facility was allegedly pursuant to an agreement between Fields and other staff members and the Detroit Police Department to subject Plaintiff to retribution for filing complaints at DRMM.  (*Id.* at ¶ 28).  Fields instructed Defendant Porter to call the police department to have Plaintiff "forcibly removed."  (*Id.* at ¶ 28).

Police Defendants Johnson, Simmons, Peoples, and John Doe surrounded Plaintiff when they arrived.  Johnson ordered Plaintiff to leave DRMM.  (*Id.* at

PageID.12, ¶ 31-33).  After "repeated" commands for Plaintiff to leave, Johnson

unholstered his taser.  This led Plaintiff to fear impending excruciating pain.  (*Id.* at

PageID.13, ¶ 35-37).  Next, Defendant officer Doe "forcefully grabbed" Plaintiff's

arms from behind and "compelled" him through to the front of the building.  (*Id.* at

PageID.14, ¶ 39-40).  Once outside, Johnson made derogatory comments about

Plaintiff.  (*Id.* at ¶ 42).  Among the comments was that Johnson did not "want to

hear any of that prison legal stuff."  (*Id.* at ¶ 44).  Plaintiff notes that no officer

defendants intervened when Officer Doe forcibly removed Plaintiff from the

building.  (*Id.* at PageID.15 ¶ 48).

Plaintiff sues Defendants for unlawful detainment, retaliation, harmful

threats, intentional infliction of emotional distress, failure to intervene, conspiracy,

and denial of procedural and substantive due process.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Governing Standards

When deciding a motion to dismiss under Rule 12(b)(6), the Court must

"construe the complaint in the light most favorable to plaintiff and accept all

allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn,

4

J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

B.    Discussion

1.    DRMM Defendants' Motion to Dismiss

The DRMM Defendants raise several arguments for dismissal of the complaint: (1) Plaintiff impermissibly references actions of all defendants, rather than alleging how each individual defendant violated his rights, (2) Plaintiff did not plead cognizable claims for intentional infliction of emotional distress and respondeat superior, (3) the conspiracy claim was not pleaded with specificity and there is no underlying constitutional violation, and (4) the DRMM employees are private citizens not subject to suit under 42 U.S.C. § 1983 for constitutional violations.  (ECF No. 11).

a.    State Actors

The undersigned will first address whether the DRMM Defendants can be held liable for violations of the United States Constitution in their roles as DRMM employees.  DRMM Defendants argue that nonprofit entities providing services are not state actors, even when the entity contracts with Michigan to provide those services.  (ECF No. 11, PageID.91-98).  They do not state that DRMM has a contract with Michigan.  Plaintiff did not directly address this argument.  Instead,

he argues that private citizens who conspire with state officials can be liable for conspiracy. (ECF No. 39, PageID.1045). Elsewhere in his brief, he asserts, without support, that the DRMM Defendants are state actors. (*See id.* at PageID.1048, 1050).

Private parties are liable under § 1983 only if they are "state actor[s]" that operated under "under color of law" such that their "private conduct is fairly attributable to the state." *Moldowan v. City of Warren*, 578 F.3d 351, 399–400 (6th Cir. 2009). There are three tests for determining whether a private actor may be treated as a state actor: "the public-function test, the state-compulsion test, and the nexus test." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014). Plaintiff has the burden to show that private action meets these tests. *See Ellison v. Garbarino*, 48 F.3d 192, 196 (6th Cir. 1995) (finding that the "plaintiff failed to meet his burden in regard to the three state action tests").

Plaintiff did not allege how the DRMM Defendants, or DRMM itself, are state actors; he did not allege their connection with the state to make clear how their conduct is attributable to the state. Reviewing the allegations liberally and applying the three state-action tests, these Defendants are not state actors.

The nexus test does not apply. "Under the nexus test, there must be a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the

state itself." *Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th

743, 757 (6th Cir. 2023).  This test requires demonstrating more than "[m]ere

cooperation"—it requires, for example, a showing that the state "directed or

otherwise ordered" the private party's actions.  *Williams v. City of Detroit*, 2020

WL 4366073, at *5-6 (E.D. Mich. July 30, 2020).

There are no allegations establishing that a state or city official directed or

ordered any of the DRMM Defendants' actions.  *See Durante v. Fairlane Town

Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006) (the required "nexus can be established

with evidence of a customary or preexisting arrangement between the government

and the private actor").

"The state compulsion test requires proof that the state significantly

encouraged or somehow coerced the private party, either overtly or covertly, to

take a particular action so that the choice is really that of the state."  *Memphis,

Tenn. Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361

F.3d 898, 905 (6th Cir.  2004).  As with the nexus test, there are no allegations

substantiating the state compulsion test.  Plaintiff did not allege that state or city

officials significantly encouraged or coerced any of the DRMM Defendants to act.

Instead, the allegations show the DRMM Defendants interacting with Plaintiff

while he was housed at the facility, and after Plaintiff's eligibility to stay was

revoked, DRMM Defendant Fields called the police to remove him.  At that point,

state-actor police officers become involved.  The police officers are not alleged to have directed or coerced DRMM Defendants in any way.

Last is the public function test.  This test "requires that the private [individual] exercise powers which are traditionally exclusively reserved to the state."  *Carl*, 763 F.3d at 595 (alteration in original) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)).  Examples of such functions are holding elections or providing medical care in a correctional facility.  *See Nugent v. Spectrum Health Servs.*, 72 F.4th 135, 140-41 (6th Cir. 2023).  Plaintiff bears the burden of showing that the private entity exercised power historically or traditionally reserved to the state.

Here, again, Plaintiff's allegations fall short.  He did not allege that the State of Michigan or City of Detroit traditionally runs shelters for persons not in the custody of the state or the city.  Traditionally, the State of Michigan does not establish and run homeless shelters.

Plaintiff argues that the DRMM Defendants conspired with the Police Officer Defendants to violate constitutional rights, and private actors who conspire with state actors can be liable for conspiracy.  In his complaint, he alleged that Defendant Fields conspired with other DRMM employees and Detroit police officers to retaliate against him for filing grievances or complaints with Fields about the shelter.  He alleged that, pursuant to the conspiracy, Fields told

8

Defendant Porter to call the police and have him forcefully removed from the shelter.  (ECF No. 1, PageID.11-12, ¶ 28).

"Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."  *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).  Thus, "claims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of the private actors for the purpose of deciding a motion to dismiss." *Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007).

Determining whether the DRMM Defendants can be liable for conspiracy to violate federal rights as private actors first requires a determination on the sufficiency of the conspiracy claim.  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985).  To successfully plead a § 1983 conspiracy, a plaintiff must allege facts sufficient to state a claim that (i) a single plan existed, (ii) the conspirators shared a conspiratorial objective to deprive the plaintiff of his or her constitutional rights, and (iii) an overt act was committed in furtherance of the conspiracy that caused the injury.  *Id.*  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.

1987).  This pleading standard is "relatively strict."  *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

DRMM Defendants assert that the conspiracy claim was not adequately pleaded and must be dismissed.  They contend that Plaintiff did not allege the existence of a single plan between them and the police officers, nor could he have since the events alleged began July 27, 2022, before the officers arrived at the scene on August 9, 2022.  (ECF No. 11, PageID.86-87).  Even if they formed a plan with the officers to remove Plaintiff from the shelter, they argue such a claim fails because there is no federal constitutional right to housing in a shelter system. (*Id.* at PageID.87-88).  Without an underlying constitutional violation, there can be no conspiracy to violate the constitution.

DRMM Defendants read the claim as if Plaintiff only alleged a conspiracy to remove him from the shelter.  But Plaintiff alleged a conspiracy *to retaliate against him* by removing him from the shelter.

To the extent that the claim is meant to be as Defendants state, the claim would fail.  Though in the context of the landlord-tenant relationship and not a homeless shelter, the United States Supreme Court clarified that the Constitution "does not provide judicial remedies for every social and economic ill.  We are unable to perceive in that document any constitutional guarantee of access to dwellings of a particular quality. . . ."  *Lindsey v. Normet*, 405 U.S. 56, 74 (1972).

Determining that the assurance of adequate housing was a legislative, not judicial, function, the Court found no constitutional right to housing. *Id.*

We can extrapolate from that holding that the Constitution does not provide a right to remain in a homeless shelter of one's choosing. Similarly, persons in homeless shelters do not have a property interest in staying at a particular homeless shelter sufficient enough to trigger the protections of procedural due process. *See Johari v. Faith Mission, Inc.*, 2005 WL 8162539, at *4 (S.D. Ohio Oct. 14, 2005) ("As a voluntary resident of a homeless shelter, Plaintiff did not have an interest sufficient to trigger procedural due process."). So Plaintiff's claim that it was a violation of the Constitution to remove him from the shelter would fail.

The claim related to removing him in retaliation is also insufficient. The First Amendment prohibits government officials from retaliating against a person engaged in protected activity. The elements of such a claim are (1) the plaintiff engaged in protected conduct (such as lodging or filing a grievance), (2) an adverse cation was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) a causal connection between elements two and three, that the adverse action was taken at least in part because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The claims fails because Plaintiff did not engage in constitutionally protected conduct. The First Amendment protects the right to "petition the

Government for redress of grievances." *See Nicholson v. City of Westlake,* 76 F. App'x 626, 628 (6th Cir. 2003).  It does not protect grievances or complaints to a private entity or to private individuals.  The DRMM Defendants are private individuals, not state actors.  Lodging complaints about the facility with the DRMM Defendants is not protected conduct under the First Amendment.  *See, e.g.*, *Gaspers v. Ohio Dep't of Youth Servs.*, 627 F. Supp. 2d 832, 854 (S.D. Ohio 2009) ("neither the Sixth Circuit, the Supreme Court, nor the district court for the Southern District of Ohio had recognized the filing of a private arbitration or the provision of testimony in such a proceeding as protected conduct under the First Amendment.").  This is so even if the DRMM's grievance process is mandated by state or city regulation—the grievance is targeted at private individuals, not the government.  Without protected conduct, there can be no violation of the First Amendment.

Neither removing Plaintiff from the shelter nor acting against him for complaining or filing a grievance with the DRMM Defendants amount to a constitutional violation.  "In the absence of a viable underlying constitutional claim, the district court [does] not err by dismissing [Plaintiff]'s claim of a conspiracy to violate his constitutional rights." *Hall v. Chapman*, 627 F. Supp. 3d 804, 817 (E.D. Mich. 2022) (citation omitted).

Because Plaintiff failed to state a conspiracy claim against the DRMM

Defendants and police officers, the DRMM Defendants cannot be considered state

actors for purposes of the conspiracy claim or any of the federal claims.  Thus, all

the federal claims against the DRMM Defendants should be dismissed.

### b.    State Law Claims

The intentional infliction of emotional distress claim is addressed below.

### 2.    Detroit Police Department Defendants

Like the DRMM Defendants, the Detroit Police Department Defendants

moved to dismiss the complaint on multiple grounds.

### a.    Defendant Chief of Police

Chief of Police, James White, argues that claims against him must be

dismissed for lack of personal involvement.  He points out that the only allegation

naming him is that the police officer defendants were employed by the Detroit

Police Department and were carrying out duties in furtherance of Police Chief

James White.  (ECF No. 13, PageID.274; ECF No. 1, PageID.20, ¶ 68).  This

allegation, they argue, is insufficient to establish White's personal involvement in

any wrongdoing.

Personal involvement in a constitutional violation is a requirement for

liability to attach in every § 1983 case.  *See Pineda v. Hamilton Cnty., Ohio*, 977

F.3d 483, 490 (6th Cir. 2020) (citation omitted).  Plaintiff did not allege any action

by White that supports a reasonable inference that he is liable for any misconduct. Even if Plaintiff's claim could be taken as raising a claim of *respondeat superior* under § 1983, it is inapplicable pursuant to that statute.  *See Monell v. Department  of Soc. Svs*., 436 U.S. 658, 691-92 (1978) (explaining that Section 1983 liability cannot be based  on a theory of *respondeat superior* or vicarious liability); *Everson v. Leis*, 556 F.3d 484, 495 (6th  Cir. 2009) (same); *Taylor v. Michigan Dep't of Corrs.*, 69 F.3d 76, 80-81 (6th Cir. 1995) (explaining that plaintiff must allege facts showing that the defendant participated, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability). White should be dismissed.

> b.    Conspiracy

The conspiracy claim should be dismissed against the police defendants for the same reasons it should be dismissed against the DRMM Defendants.

> c.    First Amendment Retaliation

Defendants argue that the claim for retaliating against Plaintiff for making complaints about the facility should be dismissed because those complaints do not constitute protected conduct.  As explained above, Defendants are correct, and the First Amendment claim should be dismissed.

> d.    Excessive Force and Duty to Intervene

Defendants contend that it is unclear which of them is alleged to have used excessive force and which failed to intervene. The allegations concerning the use of force are as follows. When Defendants Johnson, Peoples, Simmons, and Doe arrived at DRMM, they surrounded Plaintiff. Johnson repeatedly ordered Plaintiff to leave the premises, ignoring Plaintiff's reasons for not wanting to leave. After further back and forth between Johnson and Plaintiff, Johnson unholstered his taser. Then, Officer Doe moved behind Plaintiff and "forcefully grabbed" his upper arms and forced him outside. Doe's grip was hurting Plaintiff. Once outside, Johnson made derogatory remarks about Plaintiff. (ECF No. 1, PageID.13-14).

Defendants address excessive force with Johnson's unholstering his taser and the John Doe officer's use of force grabbing Plaintiff's arms and pushing him towards the door. They address these claims through the lens of qualified immunity. (ECF No. 13, PageID.277-82).

Defendants' argument begins that Johnson's act of unholstering his taser after repeated requests for Plaintiff to leave the DRMM voluntarily was an accepted form of de-escalation. As for the Doe Defendant's actions, they argue that there is no precedent establishing that grabbing a non-compliant trespasser's arms to escort them out of the building violates the constitution.

There is a two-part test to determine whether qualified immunity applies. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Defendant must "show the officer's conduct violated a constitutional right" and establish "whether the right was clearly established." *Id.*

"To determine whether a constitutional violation based on excessive force has occurred, [the Sixth Circuit] applies the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) (quotation omitted). "Throughout the inquiry, [the court] must carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016) (quotation omitted). "The ultimate question, however, is whether the totality of the circumstances justifies a particular sort of seizure." *Id.* (quotation omitted).

The mere pointing of tasers rarely amounts to excessive force. *Evans v. Plummer*, 687 F. App'x 434, 442 (6th Cir. 2017) ("[O]ur court has never found that pointing a taser, as opposed to actually discharging one, constitutes the use of excessive force."). In cases in which an officer pointed a gun or taser and was not protected by qualified immunity, the officer engaged in additional conduct that

violated the constitution.  For instance, in *Pray v. City of Sandusky*, 49 F.3d 1154 (6th Cir. 1995), officers mistakenly forced their way into the residence, backed one plaintiff through the house at gunpoint, and ordered and pushed him to floor.  The court held that the officers engaged in excessive force not because they pointed their guns, but because they pushed the plaintiffs to the floor causing injuries after they were aware they were in the wrong residence.  *Id.* at 1159; *see also Dorsey v. Barber*, 517 F.3d 389, 402 (6th Cir. 2008).

Plaintiff has pointed to no authority suggesting that unholstering the taser amounted to excessive force or that would put Johnson on notice that unholstering his taser when Plaintiff refused to leave the building amounted to a constitutional violation.  Johnson's mere unholstering his taser, without more, does not violate clearly established constitutional rights.  The claim should be dismissed against Johnson.

As to the John Doe Officer's grabbing Plaintiff and pushing or escorting him out of the building, Defendants contend that there is no precedent finding excessive force where an officer is alleged to have grabbed the arms of a trespassing suspect, who is resisting the officer's attempts at control, and merely escorted from the location.  (ECF No. 13, PageID.281).  Defendants contend that Plaintiff resisted their attempts at control because he alleged that he could not get out of John Doe's

grip and could not stop the progress towards to the exit, which suggests Plaintiff tried to get free from the officer.

"[T]he right to be free from excessive use of force is a clearly established Fourth Amendment right." *King v. United States*, 917 F.3d 409, 429 (6th Cir. 2019). But "[n]ot every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

Plaintiff's allegations do not state a claim for excessive force. He alleged he was not complying with Johnson's repeated requests that he leave the DRMM voluntarily. Plaintiff did not allege that he had any intention of leaving the building. He believed the DRMM Defendants did not have a legitimate basis to remove him from the shelter. Faced with Plaintiff's steadfast refusal to leave, the John Doe officer then grabbed Plaintiff's arms and pushed him towards the door. The officer allegedly hurt Plaintiff with his grip. Given these circumstances, however, the officer's mere grabbing Plaintiff's arms and escorting him towards the door was reasonable and did not violate the Fourth Amendment. Even if it did, it does not appear that there is precedent establishing that the John Doe Officer's actions violated the Fourth Amendment.[1]

---

[1] To the extent that Plaintiff alleged that the Defendants conspired to use excessive force, since there was no underlying constitutional violation, a conspiracy claim to commit such a violation should be dismissed.

18

Plaintiff argues that this case is like *People v. Southern*, 265 N.W. 759 (Mich. Ct. App. 1936), where the Michigan Court of Appeals said that police officers are not permitted "to put people out of places where the proprietor may not want them." *Id.* at 760.  That statement was not a holding that law enforcement officers cannot use any force to remove a person who is no longer welcome at a privately run facility.  In that case, the defendant was in an altercation with a restaurant owner.  The owner called the police, who arrived and asked the defendant to go home.  Rather than leaving, the defendant wanted to tell his side of the story.  One of the officers took the defendant by the arm and lead him out.  When the defendant jerked away from the officer, the officer drew his club and tried to hit him.  Another officer succeeded in hitting the defendant with his club. *Id.* at 759.  The Court of Appeals reversed the defendant's conviction for fighting with an officer because there was no evidence of resistance and held that the officers had no right to arrest him for breaching the peace because the altercation did not occur in front of them.  *Id.* at 760.

*Southern*, which is not binding on this Court, does not suggest that an officer is not permitted to use any force to remove a person suspected of trespassing.  And the facts in that case are not analogous.  Use of the clubs in *Southern* was a salient fact, not the officer taking the defendant by the arm and taking him outside.  Here, Officer John Doe is not accused of doing more than taking Plaintiff by the arms

and escorting him out of the building.  Plaintiff's other cases about resisting an

illegal arrest are similarly inapplicable because of the stark difference in the facts.

Last to address here is the failure to intervene claim (presumably raised

against Officers Peoples and Simmons) and the allegation that Officer Johnson

made derogatory remarks about Plaintiff.  The latter claim, which lacks factual

development, is easily dispensed with.  As Defendants point out, a § 1983 claim

cannot be based on mere abusive language, racial slurs, or verbal harassment.  *Ivey*

*v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987).  A verbal threat is actionable only

if it amounts to assault, results in physical harm, or is part of a pattern of

unnecessary and wanton abuse.  *See Guzinski v. Hasselbach*, 920 F. Supp. 762,

764, n.1 (E.D. Mich. 1996) (internal citation omitted).

The failure to intervene claim should also be dismissed.  To establish a

failure to intervene in the face of a fellow officer's use of excessive force, a

plaintiff must allege "(1) the officer observed or had reason to know that excessive

force would be or was being used, and (2) the officer had both the opportunity and

the means to prevent the harm from occurring."  *Crawford v. Geiger*, 996 F. Supp.

2d 603 (N.D. Ohio 2014).  In the absence of the excessive use of force, there can

be no failure to intervene.  Given the conclusions that Johnson and the Doe officer

did not engage in excessive force, the failure to intervene claim should be

dismissed.

e.    Unlawful Detainment

Plaintiff argues he was unlawfully detained because Defendant Johnson indicated intent to arrest him once they were outside the building.  (ECF No. 33, PageID.600).  In the complaint he alleged that Defendant Johnson demanded Plaintiff provide his name so Johnson could send him back to prison.  (ECF No. 1, PageID.16, ¶ 52).  Plaintiff understood this to mean that he could not leave the presence of the officers lest he be taken to jail.  (*Id.* at PageID.16-17, ¶ 53).  He made no attempt to leave "for a very significant time period."  (*Id.* at ¶ 55).

Defendants argue they had the requisite reasonable suspicion to satisfy the Fourth Amendment.  They contend that they were summoned to the shelter by DRMM staff members and informed that Plaintiff was no longer welcome at the shelter but was refusing to leave.  Thus, Plaintiff was trespassing.  Plaintiff then refused the officers' instructions to leave the shelter.  Despite the allegation that Johnson asked for Plaintiff's name, they argue that there is no allegation that Plaintiff was detained longer than necessary to complete their investigation.  (ECF No. 13, PageID.286-87).

For Fourth Amendment purposes, an officer seizes an individual "when the officer restrains the person's freedom of movement by means of physical force or a show of authority."  *United States v. Lewis*, 843 F. App'x 683, 688 (6th Cir. 2021) (quotation omitted).  To constitute a seizure, the individual must actually surrender

to the officer's show of authority.  *Id.* (citing *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010)).  "The question of when a seizure occurs is relevant because 'once a consensual encounter escalates to the point where the individual is 'seized,' the police officer must have a reasonable suspicion of criminal activity to justify a *Terry* stop, or probable cause to justify an arrest, in order for the seizure to comply with the Fourth Amendment.'"  *Id.* (quoting *United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007)).  "Examples of circumstances that indicate a seizure include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  *Id.* at 689 (quotation omitted).

Plaintiff's claim focuses on Johnson's request for Plaintiff's name so he could send him to prison, and because of that request, Plaintiff felt he could not leave.  "When the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence," the test for determining whether a seizure occurred is if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *Brendlin v. California*, 551 U.S. 249, 255 (2007) (citations omitted).

Plaintiff's allegations do not suggest that a reasonable person would believe they were not free to leave after an officer asked for their name to send them back to prison.  True, Johnson's reference to prison could indicate a threat that action would be taken to send Plaintiff to prison, but that language, without further statements or actions does not indicate to a reasonable person they are not free to leave the officers' presence.   Johnson's request for Plaintiff's name was not accompanied by some indication that compliance was required.  The Sixth Circuit has ruled that "no seizure has occurred when police ask questions of an individual, [and] ask to examine the individual's identification, . . . so long as the officers do not convey a message that compliance with their requests is required." *United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007); *United States v. Ward*, 756 F. App'x 560, 565 (6th Cir. 2018) (noting that "an officer's threatening tone can change a consensual interaction into a seizure").  In *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003), the Sixth Circuit addressed a claim that police officers threatened to arrest the plaintiff if she did not cooperate in their investigation.  The court found no constitutional violation "because threats alone cannot support a constitutional claim."  *Id.*; *see also Hora v. Risner*, 2020 WL 4726675, at *5 (S.D. Ohio Aug. 13, 2020) ("Although Nelson allegedly threatened to arrest Mr. Hora for trespassing if he did not remove the signs, this threat is insufficient to constitute a 'seizure' within the meaning of the Fourth

Amendment.") (citing *id.*); *United States v. Martinez*, 795 F. App'x 367, 375 (6th Cir. 2019) (finding that evidence the plaintiff was not restricted in movement weigh against a finding of custody). And Plaintiff said he did not try to leave, which cuts against his assertion of unlawful detention. (ECF No. 1, PageID.17, ¶ 55). *See United States v. Thompson*, 2023 U.S. Dist. LEXIS 225757, at *23 (D. Minn. Oct. 13, 2023) (finding that a reasonable person would not have felt they could not leave because "Defendant never asked to leave the room during the course of the interview and always had a path to a door that was not locked."). Plaintiff alleged no further action by Johnson or statements about jail or arrest that could lead to the reasonable belief that Plaintiff could not leave the officers.

If Plaintiff also intends to claim that the interactions inside the DRMM constituted unlawful detainment, that claim fails. The officers had reasonable suspicion that Plaintiff was trespassing. The DRMM staff called the police to remove Plaintiff after he was no longer welcome at the shelter. When they arrived, Plaintiff was refusing to leave. Thus, they were justified in surrounding him and escorting him out of the building. It also appears from the complaint that this detention was brief, only long enough to get Plaintiff out of the building.

f.    Procedural and Substantive Due Process

Plaintiff argues that police Defendants conspired with the DRMM Defendants to forcefully remove Plaintiff from the shelter without procedural due

process.  (ECF No. 33, PageID.602).  He says that by removing him from the homeless shelter, he was placed in harm's way having to go without food, hygiene, and privacy.  (*Id.*).  Defendants argue that these claims should be dismissed because Plaintiff did not allege a constitutionally protected property interest in housing at the shelter.  (ECF No. 13, PageID.285).

To establish a procedural  due process claim pursuant to § 1983, Plaintiff must establish three elements: (1) that he has a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that he was deprived of this protected interest within the meaning of the Due Process Clause; and, (3) that the state did not afford him adequate procedural rights prior to depriving him of the protected interest.  *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir. 1999).  As stated above, persons in homeless shelters do not have a property interest in staying at a particular homeless shelter sufficient enough to trigger the protections of procedural due process.  *See Johari*, 2005 WL 8162539, at *4 ("As a voluntary resident of a homeless shelter, Plaintiff did not have an interest sufficient to trigger procedural due process.").  Thus, Plaintiff did not have a property interest in staying at the shelter sufficient to trigger procedural due process.

As for substantive due process, it appears Plaintiff asserts that Defendants placed him in harm's way by removing him from the shelter, and doing so violated due process.  State officials can violate substantive due process "when their

affirmative actions directly increase the vulnerability of citizens to danger or otherwise place citizens in harm's way." *Ewolski v. City of Brunswick,* 287 F.3d 492, 509 (6th Cir. 2002).  To show a state-created danger, plaintiff must show: (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff. *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir. 1998).

Defendants did not analyze state-created danger.  At any rate, in the view of the undersigned, Plaintiff's allegations do not rise to the level of a substantive due process claim.[2]  The claim fails at the second element, if for no other reason. Being homeless without access to the DRMM shelter did not create a danger specific to Plaintiff that affects no other person, homeless or otherwise, in Detroit. For instance, Plaintiff did not allege that Defendants prevented him from going to a different homeless shelter later that day.  Notably, Plaintiff was allowed back at

---

[2] The Court must screen complaints filed by non-prisoners who are proceeding *in forma pauperis.  See McGore v. Wrigglesworth,* 114 F.3d 601, 608 (6th Cir. 1997) (citing 28 U.S.C. § 1915(e)(2), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)).  Dismissal is required at any time if complaints are frivolous or malicious, if they fail to state a claim for relief, or if they seek monetary relief from a defendant who is immune from such relief.  *Hill v. License*, 2018 WL 1787295 (E.D. Tenn. Apr. 13, 2018).   Thus, the undersigned can address claims or arguments not addressed by Defendants.

DRMM at least as of October 2022, according to a separate lawsuit he filed.  *See* Case No. 23-13185.  The due process claims should be dismissed.

g.   State Claim

Having recommended that all the federal claims be dismissed, the undersigned further recommends that the Court decline supplemental jurisdiction over Plaintiff's state-law claim.  Under 28 U.S.C. § 1367, a district judge may decline to exercise supplemental jurisdiction  over state-law claims if  "the district court has dismissed all claims over which it has original jurisdiction. . . ."  28 U.S.C. § 1367(c)(3).  "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state-law claims [.]"  *Musson Theatrical, Inc. v. Express Corp*., 89 F.3d 1244, 1254-55 (6th Cir. 1996).  Indeed, the Sixth Circuit has repeatedly advised that the district courts should not exercise supplemental jurisdiction over state-law claims where all original jurisdiction claims have been dismissed.  *See*, *e.g.*, *Brown v. Cassens Transp. Co*., 546 F.3d 347, 363 (6th Cir. 2008).  The undersigned recommends Plaintiff's state-law claim be dismissed without prejudice.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the motions to dismiss (ECF Nos. 11, 13) be **GRANTED** and that the complaint be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 14, 2024.                        s/Curtis Ivy, Jr.
                                            Curtis Ivy, Jr.
                                            United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on May 14, 2024.


                                            s/Sara Krause
                                            Case Manager
                                            (810) 341-7850